1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11 | IVAN P.,[1]

12 |               Plaintiff,

13 |      v.

14 | ANDREW M. SAUL,
15 | Commissioner of Social Security,

16 |            Defendant.

Case No. 2:19-cv-00486-AFM

**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER**

17

18      Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

23

## BACKGROUND

24      In July 2014 and January 2015, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since November 2, 2012. (Administrative Record ["AR"] 186-187.) Plaintiff's applications were denied

27
28

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

initially and on reconsideration. (AR 93-107, 109-124.) This case is currently before this Court after a prior remand. Following that remand, a second hearing took place on September 26, 2018 before an Administrative Law Judge ("ALJ"). Both Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 703-732.)

In a decision dated November 21, 2018, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus with neuropathy; hypertension; hyperlipidemia/dyslipidemia; obstructive sleep apnea; history of cerebrovascular accident with late residual effects; multi-level degenerative disc disease of the lumbar spine with bulges, narrowing, and facet hypertrophy; obesity; major depression with psychotic features; post-traumatic stress disorder; and cognitive disorder with expressive aphasia. (AR 676-677.) The ALJ concluded that the Plaintiff's impairments did not meet or equal any listed impairment. (AR 677.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following restrictions: he can stand and/or walk 2 hours total during an 8-hour day; he can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; he can use the right upper extremity and right lower extremity for occasional pushing and pulling; he should avoid working around unprotected heavy machinery, unprotected heights, or uneven terrain; he can use the right upper extremity for frequent handling; he should avoid concentrated exposure to extreme cold; he can understand, remember, and carry out simple job instructions; he can maintain attention and concentration to perform simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; he can have occasional interaction with coworkers, supervisors, and the general public; and he can work in an environment with occasional changes to the work setting and occasional work-related decision making. (AR 680.) Relying on the testimony of the VE, the ALJ found that Plaintiff could not perform his past relevant work as a parts

manager and auto-mechanic but could perform other work existing in significant numbers in the national economy. (AR 691.) Accordingly, the ALJ concluded that Plaintiff was not disabled.

Plaintiff did not appeal the decision to the Appeals Council. Thus, sixty days after it was issued, the ALJ's decision became the final decision of the Commissioner. This civil action followed.

## DISPUTED ISSUE

Whether the ALJ properly evaluated the medical opinion of treating physician Isaias Paja Jr., M.D.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I.    Relevant Medical Evidence

Plaintiff began treatment with Isaias Paja, Jr., M.D., in May 2015. On August 13, 2015 Dr. Paja completed a medical source statement in support of Plaintiff's claim for disability and identified the following clinical findings and

objective signs: decreased sensation as to right side of the body; tender to palpitation at lumbar spine with decreased range of motion; and weakness in the right extremities. (AR 642-644.) Dr. Paja diagnosed Plaintiff with chronic lower back pain and a history of intracranial bleeding (i.e., hemorrhagic stroke). *Id.* Dr. Paja indicated that, based on his physical impairments, Plaintiff could sit, stand, and walk for less than two hours in an 8-hour workday (with normal breaks included); needed an occupation that permitted shifting positions at will from sitting, standing, or walking; needed to take unscheduled breaks during an 8-hour workday; could rarely lift less than 10 pounds, occasionally lift 10 pounds, and frequently lift 20 or more pounds; had significant limitations in the right hand regarding reaching, handling, or fingering; and would likely need to miss more than four days of work per month due to these limitations. (AR 642-644.) At the same time, Dr. Paja reported that Plaintiff was a new patient and that he still needed to get copies of Plaintiff's medical records. (AR 644.)

From 2015 to 2017, Dr. Paja continued to treat Plaintiff. His treatment notes indicate that Plaintiff's chronic lower back pain remained unchanged throughout this time. The notes also indicate that Dr. Paja referred Plaintiff to both an orthospine and a neurospine specialist. Surgery was recommended, but Plaintiff ultimately declined. Dr. Paja also recommended pain management, but due to limited financial means, Plaintiff could not afford to travel. (AR 1117-1130.)

The record also reflects that Plaintiff was prescribed various medications for pain, including Mobic, Norco, and Ultram. (AR 572-573, 578, 615-616.) Plaintiff reported that these medications provided little to no relief. (AR 571-580.) In addition, Plaintiff reported that the medications caused him to be sedated and affected his memory and ability to think. (AR 1126.)

On November 9, 2017, Dr. Paja completed another Residual Functional Capacity Questionnaire. (AR 1148-1149.) Dr. Paja opined that, based on Plaintiff's physical impairments, Plaintiff could sit, stand, and walk less than two hours at one

time and less than two hours in an 8-hour workday; could occasionally lift up to 10 pounds and rarely lift 11 to 20 pounds; and could occasionally handle, push, pull, and perform fine manipulation with his hands. Dr. Paja rated Plaintiff's manual and finger dexterity, compared to the general population, at 11-33% in the right hand and 34-66% in the left hand. (AR 1148.) Dr. Paja further assessed that Plaintiff could occasionally bend, squat, crawl, climb, crouch, and kneel; and could frequently reach up and forward. He opined that Plaintiff could rarely tolerate exposure to unprotected heights and frequently tolerate being around moving machinery; exposure to marked temperature changes; driving automotive equipment; and exposure to dust, fumes, and other irritants. Dr. Paja estimated that the pain Plaintiff experiences is marked – defined as "serious limitation in activities precipitating pain." (AR 1149.) Dr. Paja attributed the foregoing limitations to right-sided hematemesis with weakness secondary to stroke and cited that the objective signs of pain included x-rays, muscle spasms, weakness upon physical exam, and MRI. *Id.*

An x-ray of the lumbar spine performed on March 27, 2014 revealed multi-level degenerative disc disease ranging from moderate to severe at L4-5. (AR 624.) An MRI performed on October 2, 2015 showed multi-level degenerative disc disease of the lumbar spine with bulges, narrowing, and facet hypertrophy. (AR 1095-1096.) Specifically, the MRI showed L4-5 disc desiccation and loss of disc height with a large 8mm right paracentral disc protrusion; disc material extruded superiorly behind the inferior endplate of the L4; contact of the existing L4 nerve root; and depression of the right traversing nerve root among other findings. *Id.*

## II.    The ALJ's Consideration of the Medical Opinions

In assessing Plaintiff's RFC, the ALJ accorded significant weight to the opinions of the State agency medical consultants and the consultative neurological examiner, each of whom opined that Plaintiff is unable to stand/walk for more than two hours in an 8-hour day, among other various limitations. The ALJ also considered both medical source statements completed by Dr. Paja, in which Dr. Paja

opined that Plaintiff could sit/stand for less than two hours in an 8-hour day, which the ALJ accorded little weight.

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for assigning little weight to Dr. Paja's 2015 and 2017 opinions. For the following reasons, the Court disagrees regarding the 2015 opinion, but agrees with the Plaintiff with respect to the 2017 medical source statement.

### A.    Relevant Law

If a treating or examining physician's medical opinion is uncontradicted, the ALJ may only reject it based on clear and convincing reasons. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating or examining physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted).

Because the opinion of Plaintiff's treating physician was contradicted by the opinions of the State agency medical consultants and the consultative neurological examiner, the ALJ was required to provide specific and legitimate reasons for rejecting it.

### B.    Analysis

1. <u>2015 Medical Source Statement</u>

With respect to the 2015 medical source statement, the ALJ stated:

This medical source statement was completed by a physician from Olympic Familia Clinica, and his/her signature is illegible. At the time the physician completed the medical source statement, the claimant had

apparently only been seen at the clinic one time. The physician noted that copies of his chart had yet to be reviewed. As such, it appears that this physician had no more than a "snapshot" view of the claimant's overall functioning. Further, in finding that the claimant is unable to sit or stand/walk for 2 hours each per 8-hour workday without citing any diagnostic studies or providing any specific clinic findings, it appears that this physician took the claimant's subjective allegations at face value and merely reiterated them when completing the medical source statement.

(AR 685.)

First, illegibility of a signature generally this is not a sufficient reason to discredit the 2015 opinion. If an ALJ believes that the illegibility of a signature is preventing him or her from making a disability determination, the ALJ may contact that medical source to confirm the identity of the physician who completed the statement. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted). Nevertheless, the ALJ provided another reason that is sufficient for according the 2015 opinion little weight.

Second, the ALJ correctly characterized the 2015 evaluation as a "snapshot" view based on a one-time office visit and supported almost entirely on the Plaintiff's subjective complaints. Plaintiff contends that this characterization – specifically with respect to the one-time visit – is not a valid reason for discrediting the opinion. In support of this contention, Plaintiff relies on two cases, both of which have little application here: *Pasos v. Colvin*, 2015 WL 1097329, at *5 (C.D. Cal. Mar. 9, 2015) (concluding that ALJ's finding that examining physician had examined claimant only once was not a legitimate reason to discount physician's opinion because "it is well-settled that the opinions of examining physicians (who normally see claimants only

once) are entitled to deference and subject to the same legal standard that the Commissioner must apply to the opinions of treating physicians") and *Rubalcava v. Colvin*, 2013 WL 4013404, at *2 (C.D. Cal. Aug. 5, 2013) (concluding that ALJ had not provided specific and legitimate reason for discounting consulting examiner's opinion where the ALJ gave the opinion less weight "because it was based on a one-time examination without the benefit of reviewing the claimant's longitudinal treatment history"). In both *Pasos* and *Rubalcava*, the physicians based their opinions on a one-time visit, but they also cited the patient's medical records as well as other clinical findings. *See Pasos*, 2015 WL 1097329, at *5; *Rubalcava*, 2013 WL 4013404, at *2. Here, Dr. Paja admits to having not reviewed Plaintiff's medical charts before completing the 2015 evaluation. The ALJ's characterization is reasonable and supported by substantial evidence in the record.

Accordingly, the ALJ provided legally sufficient reasons for discounting Dr. Paja's 2015 opinion. *Edwards v. Colvin*, 602 F. App'x 661, 662-63 (9th Cir. 2015).[2]

### 2. 2017 Medical Source Statement

With respect to the 2017 medical source statement, the ALJ stated:

The undersigned finds these limitations to be extreme, inconsistent with Dr. Paja's own contemporaneous treatment notes reflecting routine medical care and conservative treatment, and generally not corroborated by the other medical evidence of record. Moreover, Dr. Paja's medical

---

[2] Plaintiff also contends that the ALJ was required to view the medical record in its entirety, and as such, should have assessed the 2015 medical source statement in conjunction with the 2017 opinion. Plaintiff is correct to the extent that it would be erroneous for the ALJ to misstate the competent evidence in the record in order to justify his conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). However, Plaintiff incorrectly suggests that the objective clinical findings and diagnostic studies Dr. Paja cited in his 2017 medical source statement could be used to validate the 2015 opinion. The MRI was performed after the 2015 evaluation, and Dr. Paja did not have the 2014 x-ray results when he completed the 2015 evaluation. These sources cannot be used as evidence to support an opinion that was already made before the tests were completed, or before the physician had a chance to review their results. As such, the ALJ correctly analyzed the 2015 medical source statement independent from the 2017 medical source statement.

source statement consists primarily of a checkbox form. Little narrative explanation was provided for the assessed limitations beyond right hemiparesis and weakness. Accordingly, the undersigned finds Dr. Paja's functional assessment to be conclusory and incompatible with the medical evidence as a whole.

(AR 685.)

The ALJ's assessment of the 2017 opinion relies on a characterization of Dr. Paja's recommended treatment as "conservative" to support the conclusion that the opinion was inconsistent with the doctor's treatment notes.[3] An ALJ may reject a treating physician's opinion if that opinion is inconsistent with his or her own conservative treatment notes. *Jones v. Astrue*, 499 F. App'x 676, 677 (9th Cir. 2012). The first step in this analysis requires the ALJ to determine whether the prescribed treatment can fairly be characterized as "conservative". While case law does not establish a singular definition of "conservative" treatment, it does provide important guidelines. For example, in certain instances, treatment can be fairly characterized as conservative when narcotic pain medication is prescribed; yet, in other instances, the opposite is true, particularly where facts indicate the non-conservative nature of the treatment. *Compare De Arias v. Saul*, 2019 WL 5209248, at *6 (C.D. Cal. Oct. 16, 2019) (". . . the fact that Plaintiff was prescribed narcotic pain medication . . . [does not] invalidate[s] the ALJ's characterization of Plaintiff's treatment as conservative.") *with Vogel v. Colvin*, 2015 WL 12748243, at *2 (C.D. Cal. Sep. 19, 2015) (unclear whether Plaintiff's treatment was truly conservative in nature where plaintiff took prescription narcotic pain medication and her doctors recommended that she undergo surgery); *Miner v. Colvin*, 609 F. App'x 454, 455 (9th Cir. 2015)

---

[3] The Commissioner appears to confuse Dr. Paja's recommended course of treatment with the treatment the patient decided to obtain. A claimant's failure to follow a prescribed course of treatment, without good reason, can be used as a factor when assessing the claimant's credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, in evaluating the opinion of a treating source, the issue is what treatment was recommended – not whether the claimant chose to follow the recommended course.

1   (plaintiff's treatment may not have been characterized as conservative had her
2   doctors recommended "surgeries or other aggressive treatments"); *De Arias*, 2019
3   WL 5209248, at *6 (had the physician referred the patient to an orthopedic or pain
4   specialist, or recommend any more aggressive treatment, such as surgery, the ALJ's
5   characterization of plaintiff's treatment as conservative may not have been properly
6   supported).

7       Here, the record reflects not only consistent use of narcotic pain medication,
8   but Dr. Paja's treatment notes also reference ongoing recommendations of more
9   aggressive treatment options – including referrals to orthospine and neurospine
10  surgeons and pain management specialists. Taken as a whole, these treatment notes
11  do not support a fair characterization of the treatment recommended by Dr. Paja as
12  "routine" or "conservative." Absent this mischaracterization, the ALJ's conclusion
13  that Dr. Paja's opinion is "inconsistent" with the treatment notes is not supported by
14  substantial evidence in the record. Furthermore, absent this mischaracterization, the
15  2017 opinion is only "extreme" to the extent that it differs from other opinions in the
16  record. But the presence of conflicting opinions determines the standard to be applied
17  to the ALJ's proffered reasons; it is not a legally sufficient reason in itself. *See Pasos*,
18  2015 WL 1097329, at *4. The ALJ failed to provide any other reason, did not point
19  to any other specific evidence in the record, to support a conclusion that the opinion
20  is extreme. *See Almeida v. Barnhart*, 187 F. App'x 741, 743 (9th Cir. 2006) (ALJ
21  obliged to provide more than a conclusory explanation that "[t]he objective medical
22  findings simply do not support such an *extreme* assessment.") (emphasis added).

23      Finally, the fact that the opinion is on a check-box form with little narrative is
24  not itself a basis for rejecting it. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th
25  Cir. 2017) ("[T]he ALJ was not entitled to reject the responses of a treating physician
26  without specific and legitimate reasons for doing so, even where those responses
27  were provided on a 'check-the-box' form, were not accompanied by comments, and
28  did not indicate to the ALJ the basis for the physician's answers. . . . [T]here is no

authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments.").

Based on the foregoing, the ALJ's decision giving little weight to Dr. Paja's 2017 opinion was not supported by substantial evidence, and the ALJ failed to provide specific and legitimate reasons for that conclusion as required by the Ninth Circuit.

An ALJ's failure to properly evaluate a treating physician's opinion may be harmless error when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [opinion], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (*quoting Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir. 2006)). Properly crediting some or all of Dr. Paja's opinion would likely have affected the ALJ's RFC and, consequently, the hypothetical posed to the VE. *See Ghanim*, 763 F.3d at 1166. For this reason, the ALJ's error was not harmless.

### REMEDY

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the

first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[4]

IT IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED:  7/1/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[4]    It is not the Court's intent to limit the scope of the remand.